**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Miscellaneous Matter No. 1:21-mc-00016-CMA (arising from Civil Action No. 3:19-CV-00764-X currently pending in the United States District Court for the Northern District of Texas)

VEROBLUE FARMS USA, INC.,

    Plaintiff,

v.

LESLIE A. WULF, ET AL.,

    Defendants.

---

**ORDER**
_____

This matter is before the Court on the Motion to Quash Subpoena (Doc. # 1) filed by Employment Matters, LLC and Alder Aqua LTD (together, "Movants"). The Motion is denied for the following reasons.

## I.     BACKGROUND

Defendants Leslie A. Wulf et al. ("Defendants"), are being sued by a company called Veroblue Farms, Inc. ("VBF") in federal court in Texas. (Doc. # 1-1, p. 2). Though Employment Matters is not a party to that lawsuit, Defendants contend that Employment Matters has documents that are relevant to their defense. They subpoenaed those documents, and Employment Matters now seeks to quash the subpoena.

Neither side clearly explains the underlying facts, and the Court has almost no information about the underlying lawsuit. However, the Court gleans the following from the briefs:

- Defendants used to work for VBF as corporate officers. (Doc. # 2, p. 2).

- In 2017, one or more VBF employees complained that VBF had committed "violations of employment laws." (Doc. # 1, p. 2).

- Alder Aqua, which owns stock in VBF, hired an attorney to investigate the complaints. (Doc. # 1, p. 2).

- That attorney, in turn, hired Employment Matters to "conduct interviews and gather information under the oversight of Counsel." (Doc. # 1, p. 2).[1]

Defendants now seek production of documents related to the Employment Matters investigation. (Doc. # 1-1). Specifically, Defendants have subpoenaed:

> (1) All Documents and communications exchanged between EMFIG[2] and VBF or VBF Canada.
>
> (2) All Documents and communications exchanged between EMFIG and any of the Directors.
>
> (3) All Documents and communications exchanged between EMFIG and Haarkötter.[3]
>
> (4) All Documents and communications involving or referring to Haarkötter.
>
> (5) All Documents and communications exchanged between EMFIG and McCowan.[4]

---

[1] Movants and Defendants actually disagree about who hired Employment Matters: Movants claim Alder Aqua hired them; Defendants claim it was the VBF board of directors. For purposes of this Motion, the Court accepts Alder Aqua's version.
[2] "EMFIG" are the initials of Employment Matters LLC Flynn Investigations Group, which is apparently the full name of Employment Matters. (Doc. # 1-1, p. 5).
[3] Jens Haarkötter was a VBF board member. (Doc. # 5, p. 2).
[4] Norman McCowan. (Doc. # 1-1, p. 6). Neither side explains who McCowan is or what role he played at VBF.

2

> (6) All Documents and communications You reviewed or received as part of the Investigation.
>
> (7) All Documents and communications referring or relating to the Investigation.
>
> (8) A true and correct copy of the [investigation] Report.
>
> (9) All Documents and communications referring or relating to the Report.

(Doc. # 1-1, p. 6).

Movants now argue that this Court should quash the subpoena because (1) requests 1 and 2 seek documents that do not exist; (2) requests 3-6 and request 8 seek documents that are protected by the work-product doctrine; (3) requests 7 and 9 seek documents that are protected by the attorney-client privilege; and (4) the subpoena is unduly burdensome. (Doc. # 1).

Defendants counter that Movants have failed to prove that the subpoenaed documents are privileged or protected, or that compliance would be unduly burdensome. Therefore, Defendants argue, this Court should deny the Motion to Quash.

The Court agrees with Defendants.

## II.  **LEGAL STANDARD**

The Court must quash a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." F.R.C.P. 45(d)(3)(A)(iii) and (iv). A person withholding subpoenaed documents on grounds of privilege or other protection must "expressly make the claim" of privilege or protection and "describe the

3

nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." F.R.C.P. 45(e)(2)(A). A person seeking to quash a subpoena on grounds of undue burden must prove that responding to the subpoena would be unduly burdensome. *See, e.g., Int'l Broth. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, 11-cv-02007-MSK-KLM, 2012 WL 1801979 at *7 (D. Colo., May 16, 2012) (person seeking to quash a subpoena "bears the burden to show that responding to the discovery requests at issue would be unduly burdensome").

### III. ANALYSIS

**A. NONEXISTENT DOCUMENTS**

Movants first argue that the Court should quash requests 1 and 2 because they seek nonexistent documents. (Doc. # 1, p. 5). Specifically, Movants contend that "there were no direct communications between anyone at Employment Matters and VBF, VBF Canada, or any Director," so "there is nothing to produce with respect to those categories." (Doc. # 1, p. 5). This argument fails.

While a subpoenaed person has no obligation to produce documents that do not exist, *see Georgacarakos v. Wiley,* No. 07-cv-1712, 2009 WL 924434, at *2 (D. Colo. Apr. 3, 2009), that person nevertheless has an obligation to make a reasonable inquiry to determine whether the subpoenaed documents exist and to respond appropriately to the subpoena. F.R.C.P. 26(g), 45(e). Movants cite no authority, and the Court finds none, to suggest that a court may quash a subpoena merely because the subpoenaed party cannot find documents responsive to one or two document requests. Therefore, if

4

Employment Matters has concluded, after a diligent search, that the requested documents do not exist, it should say so when it responds to the subpoena. The subpoena will not be quashed on that basis.

**B.     WORK-PRODUCT DOCTRINE**

Movants next contend that this Court should quash the subpoena because it seeks "documents that fall squarely within" the work-product protection. (Doc. # 1, p. 6). Specifically, Movants argue that "Request Nos. 3-6 [and 8] seek documents gathered and created by Employment Matters at the direction and under the supervision of Counsel as part of Counsel's efforts to investigate the allegations that were the subject of potential litigation." (Doc. # 1, p. 6). This argument fails.

First, Movants have failed to demonstrate that requests 3-6 seek attorney work product. The work-product doctrine protects an attorney's "mental impressions, conclusions, opinions, or legal theories, authored in anticipation of litigation." *U.S. v. J-M Mfg. Co.*, No. 11-CV-01691-MSK-MJW, 2013 WL 424782, at *3 (D. Colo. Feb. 4, 2013) (internal quotation omitted). Requests 3-6 do not, on their face, request such information. Rather, requests 3-6 seek production of "[d]ocuments and communications exchanged" between Employment Matters and members of the VBF board of directors. (Doc. # 1-1, p. 6). While it is theoretically possible that those communications contain an attorney's legal opinions or litigation strategy, Movants have not provided any information that would allow the court to conclude that they did in fact include such information. "A mere allegation that the work product doctrine applies is insufficient." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). "A party resisting

5

discovery based on the attorney-client privilege or work product immunity has the burden of establishing that the privilege applies." *EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, No. 07-CV-02611-PAB-BNB, 2009 WL 1328226, at *5 (D. Colo. May 11, 2009). A person claiming work-product protection must demonstrate that each document withheld contains protected attorney work product. *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 685 (D. Colo. 2008). "To satisfy that burden, the party asserting the privilege must provide a privilege log that describes in detail the documents or information claimed to be privileged [or protected] and the precise reasons the materials are subject to the privilege asserted." *EchoStar Satellite, LLC*, 2009 WL 1328226, at *5. Here, however, Movants have failed to provide a privilege log, a description of the communications at issue, or any other information that would allow the Court to conclude that the requested documents contain attorney work product. Therefore, the Court has no basis to conclude that the documents sought by the subpoena are protected by the work-product doctrine.

    Movants argue, however, that "Request Nos. 3-6 seek documents gathered and created by Employment Matters at the direction and under the supervision of Counsel." (Doc. # 1, p. 6). This argument also fails. The work-product doctrine does not protect materials merely because they were "gathered" at counsel's direction. *See, e.g., W. Nat'l Bank v. Emp. Ins. of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985) (documents "prepared in the ordinary course of business" and gathered at the direction of counsel are not protected work product). "[T]he work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions"; it does not protect the

facts or documents that the attorney uses to create those strategies. *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Thus, the fact that a document was "gathered" by counsel does not make it protected.

Moreover, even documents created by counsel do not automatically merit work-product protection. *Id.* The work-product doctrine protects only those documents that are "prepared in anticipation of litigation" and "intended to remain confidential." *Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618, 624 (D. Colo. 1998). Thus, documents "prepared in the ordinary course of business" are generally not protected, even if they are prepared by an attorney. *W. Nat'l Bank*, 109 F.R.D. at 57. Further, to obtain the benefit of work-product protection, the movant must offer more than the conclusory assertion that the requested documents were "prepared in anticipation of litigation"; it must demonstrate "that the document was prepared or obtained in contemplation of specific litigation." *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993). To make this showing, the subpoenaed person generally must show that litigation was "commenced, threatened or contemplated" at the time the relevant documents and communications were made. *Reiss v. Brit. Gen. Ins. Co.,* 9 F.R.D. 610, 611 (S.D.N.Y. 1949). Movants have failed to make the required showing.

Movants present no evidence that litigation was commenced, threatened, or contemplated at the time the relevant documents were created. Though they allege that they hired an attorney "specifically for the purposes of anticipating potential litigation," (Doc. # 1, p. 2), they offer no information about when, where, why, or by whom they anticipated litigation. Instead, Movants rely on the conclusory assertion that the

7

Employment Matters investigation was conducted "specifically for the purpose of anticipating potential litigation." (Doc. # 1, p. 2). This conclusory assertion does not suffice to invoke the work-product protection. *See EchoStar Satellite, LLC*, 2009 WL 1328226, at *5.

Movants' challenge to request number 8 fails for the same reasons. That request seeks a copy of the "investigative report prepared [by Employment Matters] at Counsel's direction." (Doc. # 1, p. 2). Again, Movants have failed to demonstrate that the report contains protected information. Rather, they merely argue that "a lawyer at Employment Matters created the report at the direction of Counsel for the purpose of advising on potential claims." (Doc. # 1, p. 6). They fail to even argue, let alone prove, that the report contains an attorney's "mental impressions, conclusions, opinions, or legal theories," *J-M Mfg. Co.*, 2013 WL 424782 at *3, and they offer no evidence that litigation was "commenced, threatened or contemplated" at the time the report was made. *Reiss v. Brit. Gen. Ins. Co.*, 9 F.R.D. 610, 611 (S.D.N.Y. 1949). Therefore, Movant's claim of work-product protection must fail.

C.     **ATTORNEY-CLIENT PRIVILEGE**

Movants next contend that the subpoena must be quashed because it seeks documents that are protected by the attorney-client privilege. Specifically, Movants argue that requests 7 and 9 are "blockbuster requests seeking all documents and information in any way related to the Investigation . . . necessarily including information . . . protected by the attorney-client privilege." (Doc. # 1, p. 6). Again, Movants have failed to show that the privilege applies.

The attorney-client privilege protects "'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995); rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." *U.S. v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998).

A person withholding information on the basis of attorney-client privilege must make a clear showing that the privilege applies. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994); *see also In re Grand Jury Subpoena*, 697 F.2d at 279 ("The burden of establishing the applicability of [the attorney-client] privilege rests on the party seeking to assert it."). "The party must bear the burden as to specific questions or documents, not by making a blanket claim." *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). To that end, the person must "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." F.R.C.P. 45(e)(2)(A). Although the federal rules do not specifically address how to show a document is privileged, the "universally accepted" method is to submit a privilege log. *In re Grand Jury Subpoena,* 274 F.3d 563, 576 (1st Cir. 2001) (quoting *Avery Dennison Corp. v. Four Pillars,* 190 F.R.D. 1, 1 (D.D.C.1999) (a privilege log is necessary for the

court to "perform effectively its review.")). The privilege log must include "a detailed description of the documents to be protected with precise reasons given for the particular objection to discovery." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D. Kan. 1994) (internal quotation omitted).

Movants have not provided a privilege log, or any other evidence, to suggest that the subpoenaed documents are privileged. Rather, Movants advance a one-bad-apple-spoils-the-bunch theory of privilege: according to Movants, the requests are so broad that they must include *some* privileged documents; therefore, all of the documents, privileged or not, should be withheld. (Doc. # 1, p. 6). Movants offer no authority to support this theory. To the contrary, it is well established that a person must demonstrate that the privilege applies individually to "each of the documents" withheld.[5] *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998). A claim of privilege as to one document does not render other, unprivileged documents undiscoverable.

Movants also argue that when "an investigation is conducted pursuant to the direction and under the supervision of a lawyer in anticipation of litigation, the investigation is protected by the attorney-client privilege and work product doctrine." (Doc. # 1, p. 7). But Movants have failed to show that all of the documents withheld were part of the investigation, and they have failed to show that the investigation was

---

[5] There may be an exception to this general rule in circumstances where the discovery sought contains such a mass of protected documents that claiming the protection with respect to each individual document would be unduly burdensome. F.R.C.P. 45(d). But Movants have not claimed that such circumstances exist in this case.

undertaken in anticipation of litigation. They merely allege that the investigation took place "at the direction and under the supervision of counsel." (Doc. # 1, p. 6). But "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley*, 71 F.3d 1547, 1550–51 (10th Cir. 1995). Thus, Movants' vague claims about counsel's involvement in the investigation are insufficient to invoke the attorney-client privilege.

Movants contend, however, that "no privilege log is necessary." (Doc. # 5, p. 6). "A signed filing by a lawyer," they say, "effectively equates to an affidavit that the factual assertions in the filing are true and correct." (Doc. # 5, p. 2). Therefore, they argue, the Court should just take their lawyer's word for it. This argument fails on its face.

A person cannot invoke a privilege based on "mere conclusory or ipse dixit assertions." *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000) (internal quotations omitted); *see also Mize v. Kai, Inc.*, No. 17-CV-00915-NYW, 2018 WL 1035084, at *8 (D. Colo. Feb. 23, 2018) ("[A]ttorney argument, without more, does not demonstrate that the document is entitled to work product protection.") A lawyer's statements in a motion are not evidence, and they do not suffice to invoke the attorney-client privilege.

**D.     UNDUE BURDEN**

Finally, Movants argue that the subpoena "imposes an undue and disproportionate burden" on Employment Matters. (Doc. # 1, p. 7). This argument also fails.

"When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity." *Biological Processors of Alabama, Inc. v. N. Georgia Envtl. Servs., Inc.*, 2009 WL 1663102, at *1 (E.D. La. Jun. 11, 2009). "[T]he party claiming undue burden as a basis for a motion to quash is held to a high burden of proof which requires the party to demonstrate the actual manner and extent of the burden and the injurious consequences of insisting [on] compliance with the subpoena." *Ohio Valley Envtl. Coal., Inc. v. United States Army Corps of Eng'rs*, No. 1:11MC35, 2012 WL 112325, at *2 (N.D.W. Va. Jan. 12, 2012) (internal quotation omitted).

Movants have failed to establish "with specificity" what undue burden would result if they were required to respond to the subpoena. They merely claim that Employment Matters would have to "scour its files and emails for allegedly responsive documents," and "incur the expense of having Counsel review those documents prior to production." (Doc. # 1, p. 8). They offer no information about how many documents are responsive to the subpoena, how those documents are stored, how many of those documents are privileged or protected, or how much it would cost to "scour" their files. Thus, the Court has no information about the "actual manner and extent of the burden" or the "injurious consequences of insisting [on] compliance with the subpoena." *Ohio Valley Envtl. Coal. Inc.*, 2012 WL 112325, at *2. As a result, the Court has no basis to conclude that the subpoena imposes an undue burden on Movants.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Quash (Doc. # 1) is DENIED.

DATED: May 18, 2021

BY THE COURT:

_Christine M. Arguello_
CHRISTINE M. ARGUELLO
United States District Judge